1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORINIA

10

11 | JANICE H.,[1]                          Case No.:  22cv1833-W (MSB)

12 |                          Plaintiff,

13 | v.                                      **REPORT AND RECOMMENDATION ON
                                             PLAINTIFF'S BRIEF ON THE MERITS
                                             [ECF NO. 12]**
14 | MARTIN O'MALLEY, Commissioner of
    Social Security,[2]
15

16 |                          Defendant.

17

18       This Report and Recommendation is submitted to the Honorable Thomas J.

19 Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local

20 Rule 72.1(c) of the United States District Court for the Southern District of California.  On

21 November 21, 2022, Plaintiff Janice H. ("Plaintiff") filed a Complaint pursuant to 42

22 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final adverse decision by the

23

24 ───────────────

25 [1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  See SSA
26 Commissioner, https://www.ssa.gov/agency/commissioner/ (last visited on February 20, 2024).
Accordingly, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this lawsuit.  See Fed.
27 R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity
dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is
28 automatically substituted as a party").

1 | Commissioner of Social Security ("Commissioner").  (ECF No. 1.)  Now pending before
2 | the Court is Plaintiff's Brief on the Merits, claiming error by the Administrative Law
3 | Judge ("ALJ") who conducted the administrative hearing and issued the decision denying
4 | Plaintiff's application for disability insurance benefits and supplemental security income.
5 | (ECF No. 12-1 ("Mot.").)  On May 30, 2023, the Commissioner filed an Opposition.  (ECF
6 | No. 16 ("Opp'n").)  Finally, on June 5, 2023, Plaintiff filed a Reply.  (ECF No. 17 ("Reply").)
7 | The Court has carefully reviewed the Complaint [ECF No. 1], the Administrative Record
8 | ("AR") [ECF No. 10], and the parties' briefing [ECF Nos. 12-1, 16, 17].  For the reasons set
9 | forth below, the Court **RECOMMENDS** that Plaintiff's Brief on the Merits be **GRANTED in**
10 | **part**, that the Commissioner's decision be **REVERSED**, and that this matter be
11 | **REMANDED** for further administrative proceedings pursuant to sentence four of 42
12 | U.S.C. § 405(g).

13 | ## I.        PROCEDURAL BACKGROUND

14 | On March 16, 2020, Plaintiff filed an application for social security benefits under
15 | Title II and Title XVIII of the Social Security Act, alleging inability to work beginning on
16 | August 20, 2019.  (AR 180–86.)  The Commissioner denied her application initially on
17 | December 16, 2020, and again upon reconsideration on July 30, 2021.  (AR 99–103, 105–
18 | 07.)  On September 20, 2021, Plaintiff requested an administrative hearing.  (AR 108–
19 | 09.)  ALJ Kevin Messer held a telephonic hearing on February 2, 2022, during which
20 | Plaintiff appeared with counsel; Plaintiff and a vocational expert, Connie Guillory,
21 | testified.  (AR 30–60.)

22 | In a written decision dated March 16, 2022, the ALJ found that Plaintiff had not
23 | been under a disability from August 20, 2019, through the date of the ALJ's decision.
24 | (AR 12–29.)  On May 16, 2022, Plaintiff requested review of the ALJ's decision.  (AR 177–
25 | 79.)  The Appeals Council denied Plaintiff's request for review on November 14, 2022,
26 | making the ALJ's decision final.  (AR 1–6.)  See also 42 U.S.C. § 405(g).  This timely civil
27 | action followed.
28 | / / /

## II.     SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 20, 2019, the alleged onset date.[3]  (AR 18.)  At step two, the ALJ found that Plaintiff has the following severe impairments that significantly limit her ability to perform basic work activities: "lumbar degenerative disc disease, bilateral knee osteoarthritis, right knee Baker's cyst and venous insufficiency, status post sclerotherapy."  (Id.)  The ALJ determined that Plaintiff's medically determinable impairments of bilateral mallet toe, status post-surgery, and diabetes are non-severe because they minimally interfere with her ability to work.[4]  (Id.)  Further, the ALJ determined that Plaintiff's medically determinable mental impairments—anxiety and post-traumatic stress disorder ("PTSD")—are non-severe because they cause no more than minimal limitations.[5]  (AR 18–19.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Commissioner's Listing of Impairments.  (AR 20.)  Specifically, the ALJ concluded that Plaintiff's impairments did not meet the criteria for the following listed impairments: 1.15 disorders of the skeletal spine resulting in compromise of a nerve root(s); 1.16 lumbar spinal stenosis resulting in compromise of the cauda equina; 1.18 abnormality of a major joint(s) in any extremity; or 4.11 chronic venous insufficiency.  (AR 20.)  See also 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Based on his evaluation of the full record, the ALJ determined Plaintiff had the residual function capacity ("RFC") to do the

---

[3] Plaintiff worked after the alleged onset date, but it did not rise to "substantial gainful activity" because her earnings did not exceed $1,310 per month.  (AR 18.)

[4] The ALJ found that Plaintiff's alleged hiatal hernia, irritable bowel syndrome, and gastroesophageal reflux disease did not constitute medically determinable impairments because "[t]here has been no diagnosis of the alleged conditions and the record is devoid of any such documented conditions or symptoms."  (AR 18.)

[5] In making this determination, the ALJ found Plaintiff had only "moderate" limitations in the four broad areas of mental functioning.  (AR 19.)

22cv1833-W (MSB)

1  following: "perform light work as defined in 20 CFR 404.1567(b) except she is able to
2  frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl but only
3  occasionally climb ladders, ropes or scaffolds."  (AR 20.)

4       The ALJ found that Plaintiff's medically determinable impairments could
5  reasonably be expected to cause the alleged symptoms; however, he noted "the
6  intensity, persistence and limiting effects of these symptoms are not entirely consistent"
7  with the medical and other evidence.  (AR 21.)  At step four, the ALJ found Plaintiff could
8  perform her past relevant work as a program director (DOT 187.117-046) because this
9  position "does not require the performance of work-related activities precluded by
10  [Plaintiff's RFC]."  (AR 25.)  Therefore, the ALJ concluded that Plaintiff has not been
11  under a disability as defined by the Social Security Act from August 20, 2019, through
12  March 16, 2022.  (Id.)

13                              **III.    DISPUTED ISSUES**

14       Plaintiff raises four issues, which she asserts are grounds for reversal:

15       1.  Whether the ALJ reasonably considered Plaintiff's severe and non-severe
16           impairments when assessing her RFC;

17       2.  Whether the ALJ provided clear and convincing reasons to discredit Plaintiff's
18           statements;

19       3.  Whether substantial evidence supports the ALJ's finding that Plaintiff could
20           perform her past relevant work; and

21       4.  Whether the ALJ failed to address a medical opinion as required by 20 C.F.R. §
22           404.1520(c).

23  (Mot. at 12–19.)

24                           **IV.    STANDARD OF REVIEW**

25       Section 405(g) of the Social Security Act allows unsuccessful applicants to seek
26  judicial review of the Commissioner's final decision.  See 42 U.S.C. § 405(g).  The scope
27  of judicial review is limited, and the denial of benefits will only be disturbed if it is not
28  supported by substantial evidence or contains a legal error.  Luther v. Berryhill, 891 F.3d

1 | 872, 875 (9th Cir. 2018) (internal citations omitted).  "Substantial evidence" is a "'term

2 | of art used throughout administrative law to describe how courts are to review agency

3 | factfinding.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting T-Mobile S., LLC

4 | v. City of Roswell, Ga., 135 S. Ct. 808, 815 (2015)).  The Supreme Court has said

5 | substantial evidence means "more than a mere scintilla," but only "such relevant

6 | evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

7 | (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The

8 | Ninth Circuit explains that substantial evidence is "more than a mere scintilla, but less

9 | than a preponderance."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting

10 | Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988).

11 | Where the evidence is susceptible to more than one rational interpretation, the

12 | ALJ's decision must be upheld.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.

13 | 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  This includes

14 | deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.

15 | See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds

16 | that substantial evidence supports the ALJ's conclusions, the court must set aside the

17 | decision if the ALJ failed to apply the proper legal standards in weighing the evidence

18 | and reaching his or her decision.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d

19 | 1190, 1193 (9th Cir. 2004).  The reviewing court may enter a "judgment affirming,

20 | modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing

21 | court may also remand the case to the Social Security Administration for further

22 | proceedings.  Id.  However, the reviewing court "may not reverse an ALJ's decision on

23 | account of an error that is harmless."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir.

24 | 2012).

25 | / / /

26 | / / /

27 | / / /

28 | / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    DISCUSSION

### A. Whether the ALJ Reasonably Considered Plaintiff's Severe and Non-Severe Impairments when Formulating the RFC

#### 1.    Summary of the parties' arguments

Plaintiff argues that the ALJ's RFC determination did not address Plaintiff's severe and non-severe impairments as required by the Agency's regulations; therefore, it is not supported by substantial evidence.  (Mot. at 13–16.)  First, Plaintiff contends there is a "discrepancy between [Plaintiff's] damage to the knees and back" and the ALJ's assignment of "light work," which requires being able to stand or walk six hours a day. (Id. at 15.)  Second, Plaintiff argues the ALJ erred by not considering Plaintiff's mental impairments in the RFC analysis or assessing Plaintiff's PTSD under listing 12.15.  (Id. at 15–16.)

In response, the Commissioner contends that the ALJ's RFC finding reasonably accounted for Plaintiff's severe and non-severe impairments and is supported by substantial evidence.  (Opp'n at 8–13.)  First, the Commissioner says the ALJ accounted for Plaintiff's severe physical impairments—lumbar degenerative disc disease, bilateral knee osteoarthritis, right knee Baker's cyst, venous insufficiency, and status post sclerotherapy—by limiting her to light work with postural limitations.  (Id. at 8–9.) Second, the Commissioner maintains the ALJ considered Plaintiff's anxiety and PTSD and reasonably found that they did "not cause more than minimal limitation" to her ability to work, therefore making them non-severe.  (Id. at 10.)  Moreover, the Commissioner asserts that the ALJ was not required to include RFC restrictions for Plaintiff's mild mental limitations, nor was he required to address whether Plaintiff's non-severe mental impairments met specific listings.  (Id. at 11–12.)

#### 2.    Applicable law

RFC, or residual functional capacity, is a claimant's ability to do work-related activities on a sustained basis (i.e., eight hours a day, five days per week).  Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at

*1 (S.S.A. July 2, 1996).  Thus, it represents the maximum amount of work a claimant can perform despite their limitations, based on all relevant evidence in the record.  See 20 C.F.R. § 416.945(a)(1); 20 C.F.R. § 404.1545(a)(1).  In making this finding, the ALJ must consider all of the claimant's medically determinable impairments, including those that are non-severe.  See 20 C.F.R. § 404.1545(a)(2); see also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8P, 1996 WL 374184, at *5).  "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not."  Buck, 869 F.3d at 1049.  Additionally, the Ninth Circuit has held that the agency must consider the claimant's testimony regarding their capabilities, as well as all relevant evidence, including medical records, lay evidence, and pain.  Chaudhry v. Astrue, 688 F.3d 661, 670 (9th Cir. 2012); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); SSR 96-8P, 1996 WL 374184, at *5.  The Ninth Circuit has generally held that "an RFC that fails to take into account a claimant's limitations is defective."  Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009); see also Samples v. Comm'r Soc. Sec. Admin., 466 Fed. App'x 584, 586 (9th Cir. 2012).

### 3.     The ALJ's RFC finding

The ALJ concluded Plaintiff had the RFC to "perform light work as defined in 20 CFR 404.1567(b) except she is able to frequently climb ramps or stairs, balance, stoop, kneel, crouch and crawl but only occasionally climb ladders, ropes or scaffolds."  (AR 20.)  In reaching this finding, the ALJ explained that he considered all of Plaintiff's symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as medical opinions and prior administrative medical findings.  (Id.)  With respect to Plaintiff's symptoms, the ALJ noted the following:

> The claimant alleges disability due to lumbar degenerative disc disease, knee osteoarthritis, venous insufficiency, hiatal hernia, IBS, GERD and PTSD. On a Function Report, she noted difficulty lifting, squatting, bending, standing, walking, sitting, kneeling and climbing stairs.  She also noted difficulty concentrating and getting along with others, but she is able to

follow instructions.  She testified she has problems lifting more than 10 pounds and she is not able to sit or stand for more than 30 minutes at one time due to pain in her back and lower extremities, but she is able to tend to her personal care and prepare meals for herself.  She also testified she wears a brace on her right knee, and she uses a cane at times to ambulate. She stated she must watch what she eats due to her IBS and GERD.  She also stated she needs frequent restroom breaks.  She testified she avoids movies with violence against women and experiences nightmares/flashbacks due to her PTSD.  She also testified she has trouble interacting with people, she has a hard time remembering tasks and she has a short attention span.

(AR 21 (citing AR 198–204, 205–15, 269–80).)  The ALJ also summarized two adult function reports completed by Plaintiff's husband and daughter.  (AR 21.)  Ultimately, he reasoned that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Id.)

As part of his RFC analysis, the ALJ discussed the medical evidence, noting Plaintiff's history of venous insufficiency, lumbar degenerative disc disease, bilateral knee osteoarthritis, right knee Baker's cyst, and related knee, leg, and back pain.  (AR 21–22.)  Furthermore, the ALJ reviewed medical opinions and prior administrative medical findings and explained that his RFC determination—light work with postural limitations—was consistent with the opinions of two state agency medical consultants (Dr. Do and Dr. Bitonte) and a consultative examiner (Dr. Dao).  (AR 23–25.)  Moreover, the ALJ noted that none of Plaintiff's medical providers further limited her ability to perform work activities.  (AR 25.)

### 4.    Analysis

#### i.    Physical impairments

First, Plaintiff argues that although the ALJ found she had multiple severe physical impairments—lumbar degenerative disc disease, bilateral knee osteoarthritis, right knee Baker's cyst, venous insufficiency, and status post sclerotherapy—he failed to account

1   for her related standing, sitting, and walking limitations.  (Mot. at 14–15.)  She contends

2   her severe physical impairments "would reasonably be related to difficulty standing and

3   sitting."  (Mot. at 14.)  Plaintiff relies on Social Security Ruling 83-10's explanation that

4   light work requires substantial walking or standing.  (Id. at 14 (citing Titles II & XVI:

5   Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR

6   83-10, 1983 WL 31251 (S.S.A. 1983).)  She argues there is a discrepancy between the

7   damage to her knees and back and light work, which requires being able to stand for six

8   hours a day.  (Id. at 15.)  In response, the Commissioner contends the ALJ's RFC was

9   supported by substantial evidence because it accounted for Plaintiff's sitting, standing,

10  and lifting limitations and was consistent with the state agency consulting physicians'

11  findings and Dr. Dao's opinion.  (Opp'n at 9.)  We agree.

12         Pursuant to 20 C.F.R. § 404.1567(b), light work involves "lifting no more than 20

13  pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

14  The regulation further states, "[e]ven though the weight lifted may be very little, a job is

15  in this category when it requires a good deal of walking or standing, or when it involves

16  sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R.

17  § 404.1567(b).  Social Security Ruling 83-10 explains that the full range of light work

18  involves "standing or walking, off and on, for a total of approximately 6 hours of an 8-

19  hour workday."  SSR 83-10, 1983 WL 31251, at *6.  However, it also notes that "[s]itting

20  may occur intermittently during the remaining time."  Id.

21         Here, Plaintiff does not point to any evidence demonstrating that she is unable to

22  perform light work as defined by the above regulations.  Plaintiff vaguely argues that her

23  physical impairments "would reasonably be related to difficulty standing and sitting"

24  and asserts she would be unable to stand six hours a day.  (Mot. at 14–15.)  She cites Dr.

25  Vitale's summary of her MRI results from April 2021 and Dr. Cohen's prescription of a

26  right lateral knee unloading brace.  (Id. (citing AR 665, 677, 679).)  However, these

27  medical records do not address Plaintiff's ability to perform light work—they merely

28  show she had physical diagnoses.  Moreover, even though Social Security Ruling 83-10

states that light work involves standing or walking for approximately six hours a day, this does not mean a *maximum* of six hours a day, contrary to what Plaintiff seems to suggest.  SSR 83-10, 1983 WL 31251, at *6; see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009) (SSRs "reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations").  Similarly, the Ninth Circuit has interpreted "light work" to entail the ability to stand and walk for approximately six hours a day, rather than a strict six-hour requirement.  See, e.g., Guillermina R. v. Kijakazi, No. 20-56053, 2021 WL 6116636, at *1 (9th Cir. Dec. 27, 2021) (affirming ALJ's RFC formulation of light work where plaintiff was limited to about six hours of standing and walking during an eight-hour workday); Davis v. Berryhill, 743 F. App'x 846, 850 (9th Cir. 2018) (quoting SSR 83-10, 1983 WL 31251, at *6) (finding that light work involves "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").  Social Security Ruling 83-10 also provides that the standing or walking occurs "off and on," with sitting "intermittently during the remaining time."  SSR 83-10, 1983 WL 31251, at *6.  Plaintiff does not address why she would be unable to perform these activities "off and on" with normal breaks.

Further, the Court has thoroughly examined the 964-page record and finds there is substantial evidence that Plaintiff's physical impairments would not prevent her from sitting, standing, or walking for approximately six hours per day.  First, the ALJ's RFC was consistent with the medical opinion of Phong Dao, D.O., who in December 2021 performed an internal medicine examination and concluded that Plaintiff "can stand and walk for six hours in an eight hour workday" and "sit for six hours in an eight hour workday."  (AR 425.)  Second, the ALJ's RFC was consistent with the prior administrative medical findings of T. Do, M.D. and Robert Bitonte, M.D.  (See AR 73, 92–93.)  In December 2020 and July 2021 respectively, these state agency medical consultants determined that Plaintiff could sit, stand, and walk with normal breaks for

1  approximately six hours in an eight-hour workday.  (Id.)  Third, the record only includes

2  a few allegations by Plaintiff regarding her ability to sit, stand, or walk.[6]

3       Some difficulty standing, sitting, or walking does not equate to no capacity to

4  perform these activities.  Plaintiff does not identify any evidence demonstrating that she

5  cannot sit, stand, or walk for approximately six hours a day with normal breaks.  Thus,

6  the Court finds that the ALJ's RFC determination with respect to Plaintiff's physical

7  impairments is supported by substantial evidence.  See Revels, 874 F.3d at 654

8  (explaining that substantial evidence is "more than a mere scintilla, but less than a

9  preponderance").  Where the ALJ's interpretation is reasonable, as it is here, it should

10  be upheld.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

                    **ii.  Mental impairments**

11

12       Next, Plaintiff argues that the ALJ erred by not considering Plaintiff's anxiety and

13  PTSD when making his RFC determination.  (Mot. at 15–16.)  Plaintiff maintains the ALJ's

14  omission violated 20 C.F.R. § 404.1545(a), which requires the Agency to consider all

15  impairments when fashioning the RFC, even those that are non-severe.  (Id. at 15.)

16  Additionally, Plaintiff argues that the ALJ was "required to address" whether her PTSD

17  met listing 12.15 for trauma- and stressor-related disorders.  (Id. at 16.)  In response, the

18  Commissioner contends the ALJ properly considered Plaintiff's medically determinable

19  mental impairments of anxiety and PTSD and found they caused only minimal

20  limitations in the four broad areas of mental functioning.  (Opp'n at 10.)  Thus, the

21  Commissioner argues the ALJ was not required to find that Plaintiff's mild mental

22  limitations translated to RFC restrictions, citing Hoopai v. Astrue and Woods v. Kijakazi

23  in support.  (Id. at 11–12.)  Finally, the Commissioner contends the ALJ was not required

24

---

25  [6] See AR 208, 213 (in April 2020, Plaintiff said her conditions affect her "ability to sit or stand longer
than 2 hours" and that she can walk "up to a half a mile" before needing to rest), AR 421 (on December
26  9, 2020, Plaintiff reported "pain in the right knee with prolonged standing and walking"), AR
252 (on March 5, 2021, Plaintiff said "I can't sit for [too] long.  It's very difficult to sit"), AR 285 (on April
27  26, 2021, Plaintiff said "I cannot sit long in a chair.  I cannot sit for more than 30 minutes"), AR 42 (at
the administrative hearing on February 2, 2022, Plaintiff said "sitting or standing and typing when I'm
28  on the computer . . .  it was really bothering my spine and sitting").

1  to evaluate Plaintiff's PTSD under listing 12.15 because he determined it was a non-

2  severe impairment.  (Id. at 12–13.)

3         When formulating the RFC, Plaintiff correctly noted that the ALJ must consider

4  the limiting effects of both severe and non-severe medically determinable impairments.

5  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable

6  impairments of which we are aware, including your medically determinable

7  impairments that are not 'severe'"); see also Buck, 869 F.3d at 1049.  For mental

8  impairments, Social Security Ruling 96-8P explains the ALJ must provide a "more

9  detailed assessment" than what is required by the step two, paragraph B analysis.[7]  See

10  Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996

11  WL 374184, at *4 (S.S.A. July 2, 1996).  Ninth Circuit courts have held that the ALJ's

12  decision must include some discussion or analysis of how an individual's non-severe

13  mental impairments were factored into the ultimate RFC determination.  See, e.g.,

14  Hutton v. Astrue, 491 F. App'x 850 (9th Cir. 2012) ("Regardless of [the mental

15  limitation's] severity, however, the ALJ was still required to consider [the plaintiff's

16  mental limitation] when he determined [the plaintiff's] RFC"); Victor R. v. O'Malley,

17  23cv501-GPC (BGS), 2024 WL 392616, at *4–5 (S.D. Cal. Feb. 1, 2024) (finding error

18  where the ALJ did not explain why his findings of mild limitation in the four broad areas

19  of mental functioning at step two were not included in the RFC); Patricia C. v. Saul,

20  19cv636-JM (JLB), 2020 WL 4596757, at *13 (S.D. Cal. Aug. 11, 2020) (finding error

21  where the ALJ incorporated the step two analysis into the RFC analysis, rather than

22  performing a "more detailed" review), report and recommendation adopted sub nom.

23  Craig v. Saul, No. 19cv636-JM (JLB), 2020 WL 5423887 (S.D. Cal. Sept. 10, 2020).

___

[7] "The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment."  SSR 96-8P, 1996 WL 374184, at *4.

Here, at step two, the ALJ found that Plaintiff's "medically determinable mental impairments of anxiety and [PTSD], considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (AR 18.) The ALJ based this on findings that Plaintiff had "mild" limitations in the four broad areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (AR 18–19.) The ALJ then acknowledged the difference between the step two, paragraph B analysis and the mental RFC assessment:

> [t]he limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(See AR 19–20.) Despite finding mild limitations in all four mental functioning areas at step two, the ALJ did not articulate why he did not include any mental limitations in the RFC. (See AR 20–25.)

The ALJ erred by merely incorporating the step two analysis of Plaintiff's non-severe mental impairments into the RFC analysis, rather than explaining why Plaintiff's mental impairments did not warrant RFC restrictions. See Craig H. v. Kijakazi, No. 22cv800-AJB (LR), 2023 WL 4679342, at *12 (S.D. Cal. July 21, 2023) (reversing where "the ALJ's discussion of Plaintiff's RFC contain[ed] no analysis of Plaintiff's mild mental limitations"); Kitty S. v. Kijakazi, No. EDCV 21-00390-JEM, 2022 WL 2117160, at *5-7 (C.D. Cal. June 13, 2022) (reversing where the ALJ made "mild step two paragraph B findings" but did not discuss plaintiff's mental impairments when assessing RFC). The ALJ's boilerplate language at the conclusion of step two—that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has

1   found in the 'paragraph B' mental function analysis"—does not satisfy the "more

2   detailed" analysis required by SSR 96-8P.  (AR 20.)  While mild mental impairments do

3   not necessarily need to be reflected in the ultimate RFC, the ALJ should have provided

4   some sort of indication that he considered the limiting effects of Plaintiff's non-severe

5   mental impairments at this step.  See Medlock v. Colvin, 2016 WL 6137399, at *5 (C.D.

6   Cal. Oct. 20, 2016) (explaining "[c]onsideration of the limiting effects of all impairments

7   does not necessarily require the inclusion of every impairment into the final RFC"

8   provided the ALJ "specifies reasons supported by substantial evidence for not including

9   the non-severe impairment").  Because the ALJ's decision did not include any discussion

10   of how Plaintiff's anxiety and PTSD were factored into the RFC, the Court finds error.

11       Lastly, the Court finds no error with respect to Plaintiff's argument that the ALJ

12   was "required to address" whether her PTSD met listing 12.15.  (Mot. at 16.)  Pursuant

13   to the Agency's regulations, the ALJ will determine whether a mental impairment

14   "meets or is equivalent in severity to a listed mental disorder" only if the ALJ finds that

15   the claimant's "mental impairment(s) is severe."  See 20 C.F.R. § 404.1520a(d)(2).  Here,

16   the ALJ considered Plaintiff's PTSD at step two and found it was a non-severe

17   impairment.  (AR 18.)  Accordingly, the ALJ was not required to address whether her

18   PTSD met listing 12.15.  See 20 C.F.R. § 404.1520a(d)(2).  Plaintiff only challenges the

19   ALJ's non-severity determination in her Reply; she argues that the ALJ failed to support

20   his finding that her PTSD was non-severe because he did not address Plaintiff's medical

21   providers at the Veterans Administration ("VA").  (Reply at .)  Aside from this vague

22   assertion, Plaintiff points to no evidence demonstrating that her PTSD was severe or

23   that the ALJ's finding of non-severity was not supported by substantial evidence.  (See

24   generally Mot. & Reply.)  Moreover, the Court need not review the ALJ's non-severity

25   finding because it was not raised in Plaintiff's opening brief. [8]  See Cruz v. Int'l Collection

26

27   ────────────────
    [8] Though the Court need not reach this issue, the ALJ's non-severity finding appears to be supported by
28   substantial evidence.  The record reflects that after being diagnosed with PTSD in March 2016, Plaintiff
    completed a psychotherapy course from March 2016 through February 2017 "with significant

1    Corp., 673 F.3d 991, 998 (9th Cir. 2012) (internal citations and quotations omitted) ("We

2    review only issues which are argued specifically and distinctly in a party's opening

3    brief").

4        **5.    Conclusion**

5        For the reasons explained above, the Court finds that although the ALJ's RFC

6    properly accounted for Plaintiff's physical impairments, the ALJ erred by not explicitly

7    considering Plaintiff's anxiety and PTSD in the RFC assessment and merely incorporating

8    his step two analysis.  See Hutton, 491 F. App'x at 850–51 (reversing where an ALJ

9    determined at step two that plaintiff's PTSD was non-severe but did not address PTSD in

10   the RFC analysis).  The Court **RECOMMENDS** that Plaintiff's merits brief be **GRANTED** as

11   to this issue, for the limited purpose of addressing Plaintiff's mental impairments in the

12   RFC analysis.

13       **B.  Whether the ALJ Provided Clear and Convincing Reasons to Discredit Plaintiff's**

14       **Statements**

15       **1.    Summary of the parties' arguments**

16       Plaintiff next claims that the ALJ did not provide clear and convincing reasons for

17   discrediting her testimony.  (Mot. at 17.)  Plaintiff's argument consists of a single

18   paragraph and does not substantively address the ALJ's discussion—she merely

19   contends the ALJ "ignored the VA record using the Disability Determination

20   evaluations."  (Id.)  In response, the Commissioner argues the ALJ properly found that

21   Plaintiff's allegations were "at odds with the longitudinal record and did not deserve full

22   weight."  (Opp'n at 13–18.)  The Commissioner contends Plaintiff's challenge is facially

23

_____

24   reduction in symptoms and improvement in functioning."  (AR 650.)  Plaintiff periodically sought help
     from Dr. Victoria Farrow when she experienced increases in PTSD symptoms.  (Id.)  In June 2021, she
25   reported a significant resurgence of PTSD symptoms during the COVID-19 pandemic.  (Id.)  However,
     the record also reflects that a consultative examining psychologist and two state agency consulting
26   psychologists concluded Plaintiff's conditions caused no more than mild mental limitations.  (AR 23–24,
     70, 89–90.)  In October 2021, Plaintiff's provider discussed "booster sessions of therapy, research
27   studies, and possible interventions such as mantram meditation for PTSD," however Plaintiff "did not
     feel a need to reinitiate therapy." (AR 948–49.)  In January 2022, Plaintiff reported feeling "fine" overall
28   on Zoloft medication and said she "does not feel she really needs therapy at this time."  (AR 926.)

1  invalid because she merely provides a "bald assertion" without addressing the ALJ's

2  reasoning or any of the evidence pertaining to her allegedly debilitating conditions.  (Id.

3  at 14–15.)  Moreover, the Commissioner argues that the ALJ provided the following

4  reasons for discounting Plaintiff's testimony:  (1) several conditions Plaintiff alleged

5  contributed to her disability were not medically determinable; (2) Plaintiff's ability to

6  perform daily activities was inconsistent with her alleged limitations; (3) Plaintiff

7  declined treatment for impairments she alleged were disabling and received

8  conservative treatments that were effective; and (4) the objective evidence

9  contradicted the degree of limitation Plaintiff alleged.  (Id. at 15–18.)

10        **2.    Applicable law**

11        When evaluating a claimant's allegations regarding subjective symptoms, the ALJ

12  must engage in a two-step analysis.  Johnson v. Kijakazi, No. 19-17359, 2022 WL

13  1553259, at *1 (9th Cir. May 17, 2022); Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir.

14  2009); see also Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability

15  Claims, SSR 16-3P, 2017 WL 5180304, at *2–3 (S.S.A. Oct. 25, 2017).  First, the ALJ must

16  determine whether there is objective medical evidence of an underlying impairment

17  that "could reasonably be expected to produce the pain or other symptoms alleged."

18  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759

19  F.3d 995, 1014–15 (9th Cir. 2014)).  The claimant is not required to show that an

20  underlying impairment could reasonably be expected to cause the severity of the pain

21  alleged, but only that it could have reasonably caused some degree of pain.  Vasquez,

22  572 F.3d at 591 (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

23        Second, if the claimant satisfies the first step and there is no evidence of

24  malingering, then the ALJ may reject the claimant's statements about the severity of

25  their symptoms "only by offering specific, clear and convincing reasons for doing so."

26  Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and

27  convincing standard is the most demanding required in Social Security cases."  Revels,

28  874 F.3d at 655 (quoting Garrison, 759 F.3d at 1014–15).  General findings are

1  insufficient, and the ALJ must identify which specific symptom statements are being

2  discounted and what evidence undermines those claims.  See Lambert v. Saul, 980 F.3d

3  1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090,

4  1102 (9th Cir. 2014)); Burch, 400 F.3d at 680.  An ALJ's failure to identify specific

5  statements and explain why they are not credible constitutes harmful error because it

6  precludes meaningful review.  Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015);

7  SSR 16-3P, 2017 WL 5180304, at *10 ("The determination or decision must contain

8  specific reasons for the weight given to the individual's symptoms, be consistent with

9  and supported by the evidence, and be clearly articulated so the individual and any

10  subsequent reviewer can assess how the adjudicator evaluated the individual's

11  symptoms.").

12       "[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the

13  ALJ considers "all of the evidence presented," including information about the

14  claimant's prior work record, statements about their symptoms, evidence submitted by

15  their medical sources, and observations by the Agency's employees and other persons.

16  20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3).  Factors the ALJ may consider, in

17  addition to objective medical evidence, include Plaintiff's daily activities; the location,

18  duration, frequency, and intensity of their pain or other symptoms; precipitating and

19  aggravating factors; the type, dosage, effectiveness, and side effects of any medication

20  taken to alleviate pain; treatment; and any other measures used to relieve pain.  See 20

21  C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3); SSR 16-3P, 2017 WL 5180304, at *7–8.

22  The ALJ may also consider inconsistencies between Plaintiff's statements and the

23  medical evidence.  See 20 C.F.R. § 404.1529(c)(4); 20 C.F.R. § 416.929(c)(4).

24       **3.    Analysis**

25       As an initial matter, the Commissioner correctly notes that the Court can only

26  review "issues which are argued specifically and distinctly in a party's opening brief" and

27  "will not manufacture arguments for an appellant."  (Opp'n at 14 (quoting Greenwood

28  v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) (internal quotations omitted).)  Here, Plaintiff

generally asserts that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony because she used the Disability Determination evaluations and ignored the VA records.  (Mot. at 17.)  Plaintiff submits she "has a medically prescribed brace, cane and has undergone aggressive treatment to reduce her chronic pain in her legs and knees."  (Id.)  Aside from this generic reference to her symptoms and treatment, Plaintiff fails to raise specific arguments about why the ALJ's assessment was erroneous.  (Id.)  This is analogous to Meyers v. Berryhill, where the Ninth Circuit affirmed an ALJ's disability denial in part because the plaintiff failed "adequately to develop several of her arguments 'specifically and distinctly' . . . as required to invoke the Court's review," and instead "assert[ed] in declaratory language that the ALJ 'failed to properly evaluate' or 'improperly discredited' evidence."  733 F. App'x 914, 916 (9th Cir. 2018).  Because Plaintiff did not meaningfully develop her arguments regarding the symptom testimony in her opening brief, she has failed to meet her burden of demonstrating a harmful error.[9]  See, e.g., Valerie P. v. Kijakazi, No. 3:21-CV-01160-SB, 2022 WL 2712956, at *7 (D. Or. July 13, 2022) (holding plaintiff failed to demonstrate harmful error where she failed to adequately develop many arguments, including those related to her symptom testimony); Charles H. v. Kijakazi, No. 3:21-CV-00167-SB, 2022 WL 2802219, at *10 (D. Or. July 18, 2022) (declining to address the ALJ's discounting of a medical opinion where the plaintiff failed to adequately develop arguments).

Nonetheless, the Court finds that the ALJ has provided clear and convincing reasons for discrediting Plaintiff's symptom testimony.  Trevizo, 871 F.3d at 678; Brown-Hunter, 806 F.3d at 489.  Namely, the ALJ's identification of inconsistencies between Plaintiff's testimony and the objective medical evidence is a clear and convincing

---

[9] In her Reply, Plaintiff also fails to "specifically and distinctly" argue why the ALJ failed to provide clear and convincing reasons for discrediting her symptom testimony.  Greenwood, 28 F.3d at 977.  Plaintiff contends that the ALJ "cherry picked" statements throughout the record, but only provides a single example of alleged cherry-picking.  (Reply at 10–11.)

1  reason.  See Koch v. Berryhill, 720 F. App'x 361, 364 (9th Cir. 2017) (finding that the "ALJ

2  properly discredited [plaintiff's] testimony because it was inconsistent with objective

3  medical evidence"); Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (finding that

4  inconsistencies between plaintiff's testimony and medical record are proper grounds to

5  discredit plaintiff's testimony); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)

6  ("Although lack of medical evidence cannot form the sole basis for discounting pain

7  testimony, it is a factor that the ALJ can consider in his credibility analysis").  Here, the

8  ALJ identified inconsistencies between Plaintiff's allegations of difficulty sitting,

9  standing, and walking and the medical evidence.  Compare AR 21 (noting Plaintiff's

10 testimony that "she is not able to sit or stand for more than 30 minutes at one time due

11 to pain in her back and lower extremities"), with AR 208, 210 (in her April 2020 Function

12 Report, Plaintiff said she can sit or stand for two hours); AR 481 (in October 2020,

13 Plaintiff said she was "very active and has been walking up to 5 miles x 5 days a week");

14 AR 273 (in her April 2021 Function Report, Plaintiff reported being able to sit for two

15 hours); AR 650 (in June 2021, Plaintiff said "I'm walking and trying to keep myself

16 active"); AR 690 (in September 2021, Plaintiff reported exercising "a few times a week");

17 AR 938 (in December 2021, Plaintiff reported being "[a]ble to walk normally").

18      Additionally, the ALJ identified discrepancies between Plaintiff's alleged activity

19 level and her ability to tend to her own personal care, cleaning, and cooking.  See AR

20 210 (in her April 2020 Function Report, Plaintiff said she prepares "three meals a day

21 and a snack," which usually takes "1 to 2 hours" and that she performed "light

22 housework"); AR 417 (in September 2020, Plaintiff said she could do "housework to

23 include[e] cleaning, cooking, and laundry independently along with going grocery

24 shopping"); AR 275 (in her April 2021 Function Report, Plaintiff reported preparing her

25 own meals); AR 47–48 (at the February 2022 hearing, Plaintiff testified to maintaining

26 her own personal hygiene, going on errands to the store, and preparing her own meals).

27 Daily activities may be used to discredit an individual's testimony about the severity of

28 her symptoms if the activities contradict the individual's other testimony—as appears to

1 | be the case here.  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citing Fair v.
2 | Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

3 | **4.   Conclusion**

4 | Plaintiff failed to develop her arguments related to her symptom testimony
5 | "specifically and distinctly," and the Court cannot manufacture arguments on her
6 | behalf.  Cruz, 673 F.3d at 998.  Nevertheless, the Court finds that the ALJ's decision
7 | contains clear and convincing reasons for discounting Plaintiff's testimony.  Trevizo, 871
8 | F.3d at 678.  Thus, the Court **RECOMMENDS** that Plaintiff's merits brief be **DENIED** as to
9 | this issue.

10 | **C.  Whether Substantial Evidence Supports the ALJ's Finding that Plaintiff Could**
11 | **Perform Past Relevant Work**

12 | **1.    Summary of the parties' arguments**

13 | Plaintiff next argues that the ALJ erred at step four[10] by finding that Plaintiff could
14 | perform her past relevant work.  (Mot. at 17–18.)  Specifically, Plaintiff asserts damage
15 | to her knees and back prevents her from walking and standing for six hours per day, a
16 | requirement of her past relevant work as a program director.  (Id. at 18.)   Plaintiff re-
17 | alleges that "the RFC does not address knee, back and mental limitations" and explains
18 | "she left the job because she could not keep up because of her pain and because she
19 | was triggered and had episodes where she was unable to function because of PTSD."
20 | (Id.)  In response, the Commissioner emphasizes that Plaintiff's argument "relies on her
21 | prior unsuccessful claims that the ALJ erred in assessing her RFC," without presenting an
22 | independent basis for remand.  (Opp'n at 18.)  Because substantial evidence supports
23 | the ALJ's RFC finding, the Commissioner argues Plaintiff's argument fails.  (Id.)

24 | **2.    Applicable law**

25 | At step four of the sequential evaluation process, a social security claimant bears
26 | the burden of showing that he can no longer perform his or her past relevant work.

27 |

28 | [10] Plaintiff refers to step five in her argument.  (Mot. at 18.)  Because past relevant work is assessed at step four, the Court assumes Plaintiff's step five reference was a mistake.  See 20 C.F.R. § 404.1520(f).

1   Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001).  "Although the burden of proof lies

2   with the claimant at step four, the ALJ still has a duty to make the requisite factual

3   findings to support his conclusion."  Ocegueda v. Colvin, 630 F. App'x 676, 677 (9th Cir.

4   2015) (quoting Pinto, 249 F.3d at 844).  In order to find that a claimant has the capacity

5   to perform past relevant work, the ALJ is required to make findings of fact as to: (1) the

6   claimant's RFC; (2) the physical and mental demands of the past job; and (3) a finding of

7   fact that the individual's RFC would permit a return to his or her past job or occupation.

8   Id. (citing Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in

9   Gen., SSR 82-62, 1982 WL 31386, at *4 (S.S.A. Jan. 1, 1982)

10       The claimant must be able to perform his or her past relevant work either (1) as

11  the claimant actually performed it or (2) as generally required by employers in the

12  national economy.  See 20 C.F.R. § 404.1560(b)(2).; Pinto, 249 F.3d at 844–45.  The

13  claimant is the primary source of information regarding how their past relevant work

14  was actually performed.  See Ocegueda, 630 F. App'x at 677 (citing SSR 82-62, 1982 WL

15  31386, at *3).  An ALJ may also rely on the opinion of a vocational expert ("VE") in

16  evaluating the requirements of a claimant's past relevant work either as actually

17  performed or as generally performed.  Id. (quoting 20 C.F.R. § 404.1560(b)(2)) (providing

18  that at step four, a VE's testimony "concerning the physical and mental demands of a

19  claimant's past relevant work, either as the claimant actually performed it or as

20  generally performed in the national economy[,] . . . may be helpful in supplementing or

21  evaluating the accuracy of the claimant's descriptions of his past work").

22       **3.    Analysis**

23       Plaintiff stated in her "Work History Report" dated April 30, 2020, that she

24  worked as an "administrator" in an office from April 1991 to August 2019.  (AR at 227–

25  230.)  She said the job involved managing "an apprenticeship and charter high school

26  programs." (AR 229.)  Additionally, Plaintiff reported the job required her to walk for

27  four hours a day, stand for three hours a day, and/or sit for six to eight hours a day.  (Id.)

28  Plaintiff said she lifted and carried textbooks, and the most she lifted was twenty-five

1   pounds.  (Id.)  At the administrative hearing, Plaintiff explained she worked as the

2   program administrator or director of apprenticeship at "Black Contractors Association of

3   San Diego," a state and federally approved apprenticeship program started by her

4   husband.  (AR 40, 55.)  The VE categorized Plaintiff's past work as "program director"

5   (DOT 187.117-046).  (AR 55.)  The VE testified that the position is "light and skilled with

6   an SVP of 8," but because Plaintiff performed it "slightly beyond the light level, lifting 25

7   pounds," she would classify it as medium work.  (AR 55–56.)

8        Based on the VE's testimony and the Work History Report, the ALJ determined

9   Plaintiff's time as a program director met the "duration requirement[] as skilled work at

10   SVP 8" because it was performed within the last fifteen years, lasted long enough for

11   Plaintiff to learn how to do the job, and Plaintiff's earnings record showed it was a

12   substantial gainful activity.  (AR 25.)  The ALJ noted the VE's testimony that a

13   hypothetical individual with Plaintiff's RFC could perform her past relevant work as

14   program director; accordingly, he found Plaintiff could perform her past relevant work

15   "as generally performed."  (Id.)

16        "The best source for how a job is generally performed is usually the Dictionary of

17   Occupational Titles."  Pinto, 249 F.3d at 845.  According to the Dictionary of

18   Occupational Titles ("DOT"), the program director position requires a specific vocational

19   preparation ("SVP") level of 8, which requires over four years and up to ten years to

20   learn the job.  See DICOT 187.117-046, 1991 WL 671354.  Further, the position involves

21   a strength level of light work, or occasionally lifting up to twenty pounds and frequently

22   lifting up to ten pounds.  Id.  Once again, Plaintiff's merits brief contains sparse

23   argument as to why the ALJ's past relevant work finding is erroneous.  (Mot. at 17–18.)

24   She seems to argue that she cannot perform her past work as a program administrator

25   because it requires standing or walking for six hours a day.  (Id.)  However, as previously

26   discussed, even though Social Security Ruling 83-10 states that light work involves

27   standing or walking for approximately six hours a day, this does not mean a *maximum* of

28   six hours a day.  See SSR 83-10, 1983 WL 31251, at *6.

1    Plaintiff points to no specific evidence demonstrating she cannot perform light

2    work "off and on" with normal breaks.  See supra Part V.A.  Thus, Plaintiff has not met

3    her burden of showing she is unable to complete her past relevant work as a program

4    director.  Pinto, 249 F.3d at 844.  Moreover, the Court finds there is substantial evidence

5    supporting the ALJ's finding because he relied on Plaintiff's description of her job duties,

6    the VE's testimony, and the DOT, as is permitted.  See, e.g., Zavalin v. Colvin, 778 F.3d

7    842, 845–46 (9th Cir. 2015) (noting the DOT is the Agency's "primary source of reliable

8    job information"); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (noting an

9    individual's description of past work is considered highly probative).

10        **4.    Conclusion**

11    Plaintiff once again fails to develop her arguments "specifically and distinctly" and

12    has not met her burden of showing she is unable to complete past relevant work as

13    generally performed.  Cruz, 673 F.3d at 998; Pinto, 249 F.3d at 844.  Nonetheless, the

14    Court finds the ALJ's past relevant work finding is supported by substantial evidence.[11]

15    The Court **RECOMMENDS** that Plaintiff's merits brief be **DENIED** as to this issue.

16    **D.  Whether the ALJ Failed to Address a Medical Opinion**

17        **1.    Summary of the parties' arguments**

18    Plaintiff's final argument—like her previous ones—is difficult to discern.  (Mot. at

19    19.)  She cites to 20 C.F.R. § 404.1520c and contends the ALJ is required to "resolve

20    discrepancies between medical sources."  (Id.)  Plaintiff then lists the following

21    treatment notes: (1) in October 2020, Plaintiff told her podiatrist that she could no

22    longer walk five miles a day due to pain [AR 481]; (2) in September 2020, doctors

23    diagnosed Plaintiff with lumbar radiculopathy, chronic bilateral knee pain, and left

24    shoulder pain [AR 834]; (3) a CT scan showed damage to her lower spine, knees, and

25

26

---

27    [11] The Court previously found that although the ALJ's RFC properly accounted for Plaintiff's physical
impairments, the ALJ erred by not explicitly considering Plaintiff's anxiety and PTSD in the RFC

28    assessment.  See supra Part V.A.  Because a new RFC determination could necessarily impact the step
four factual findings, the ALJ should also conduct a new step four analysis if remand is granted.

feet [citation missing]; (4) in October 2021, Psychiatrist Dr. Li noted Plaintiff's diagnosis for PTSD and that she was taking sixteen medications [AR 953]; and (5) in December 2021, Dr. Allison stated Plaintiff could perform physical activity as tolerated [AR 938]. (Id.)  Plaintiff concludes by asserting that the ALJ failed to discuss "the medical opinion from the VA but only addressed the administrative findings."  (Id.)

In response, the Commissioner argues that Plaintiff fails to identify any unaddressed medical opinions and fails to show error.  (Opp'n at 19–20.)  The Commissioner maintains that a medical opinion is a statement that discusses an individual's "specific abilities pertinent to functioning in a workplace."  (Id. at 19 (citing 20 C.F.R. § 404.1513(a)(2)).)  Contrary to Plaintiff's contentions, the Commissioner argues the isolated treatment notes reflect subjective complaints, diagnoses, and treatment.  (Id. at 19–20.)  Because they are not "opinions" about how Plaintiff could perform with respect to work activities, the ALJ was not required to address them.  (Id.)

**2.    Applicable law**

Plaintiff applied for disability insurance benefits on March 16, 2020.  (AR 180–86.)  Because this is after March 27, 2017, the SSA's revised regulations for considering evidence apply.  See 20 C.F.R. § 404.1520c (2017).  The revised regulations provide that "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s)."  20 C.F.R § 404.1513(a)(2).  In adult claims, medical opinions are about impairment-related limitations and restrictions in an individual's ability to: (1) perform physical demands of work activities; (2) perform mental demands of work activities; (3) perform other demands of work, such as seeing, hearing, or using other senses; and (4) adapt to environmental conditions.  20 C.F.R § 404.1513(a)(2)(i) – (iv).  In contrast, "other medical evidence" is defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R § 404.1513(a)(3).

22cv1833-W (MSB)

The ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of all medical opinions and articulate his or her assessment as to each. Id. In evaluating persuasiveness, the relevant factors are supportability, consistency, the relationship between the source and the claimant, the source's specialization, and other factors such as the source's knowledge of other evidence and whether there was subsequently submitted evidence. 20 C.F.R. §§ 404.1520c(c)(1)–(c)(5). Though the ALJ may discuss each of these factors, the regulations only require the ALJ to explain how they considered the two most important factors—supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The Ninth Circuit has held that "the decision to discredit any medical opinion[] must simply be supported by substantial evidence." Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022). See also Kitchen v. Kijakazi, 82 F.4th 732, 739 (9th Cir. 2023) (explaining how an ALJ weighing a medical opinion must provide an explanation supported by substantial evidence, which articulates how they considered supportability and consistency).

### 3.  Analysis

Here, the Court agrees with the Commissioner that the various records highlighted by Plaintiff are more akin to "other medical evidence" than "medical opinions." 20 C.F.R § 404.1513(a)(2)–(3). The treatment notes that Plaintiff cites memorialize her subjective complaints, results on examinations, and treatment, among other things. (See AR 481, 834, 938, 953.) They do not indicate functional limitations resulting from Plaintiff's impairments, nor do they opine on her ability to perform the physical, mental, and other demands of work. (Id.) Accordingly, because these notes do not address judgments about Plaintiff's work limitations or restrictions, the ALJ was not required to evaluate them as "medical opinions" under the relevant regulations. See, e.g., Timothy V. v. Comm'r, Soc. Sec. Admin., No. 6:23-CV-00341-HZ, 2024 WL 341071, at *5 (D. Or. Jan. 30, 2024) (finding a medical report was " 'other medical evidence,'

1  because it includes judgments about the nature and severity of Plaintiff's impairment,

2  his medical history, clinical findings, and a diagnosis"); Rodin v. Comm'r of Soc. Sec., No.

3  1:21-CV-00900-SAB, 2023 WL 3293423, at *12 (E.D. Cal. May 5, 2023) (finding records

4  were "other medical evidence" due to the "absence of sufficient specified statements

5  about what Plaintiff can still do, or specific functional limitations"); Darren Jeffrey C. v.

6  Kijakazi, No. 3:21-CV-01012-AHG, 2022 WL 4474261, at *20 (S.D. Cal. Sept. 26, 2022)

7  (finding a psychological evaluation was not a "medical opinion" because it was not

8  prepared in connection with plaintiff's disability claim and did not address "those

9  particular categories of functioning in the language that would be used on a standard

10  Mental Residual Functional Capacity Assessment form").

11       Plaintiff also makes a passing reference to "the medical opinion from the VA" and

12  contends the ALJ "only addressed the administrative findings."  (Mot. at 19.)  Plaintiff

13  does not identify what part of the administrative record she is referring to, nor does she

14  articulate specific arguments as to why the ALJ erred by allegedly overlooking this

15  evidence.  (Id.)  Based on this sparse information, the Court finds no error.  Cruz, 673

16  F.3d at 998 ("We review only issues which are argued specifically and distinctly in a

17  party's opening brief").

18       **4.  Conclusion**

19       Thus, the Court **RECOMMENDS** that Plaintiff's merits brief be **DENIED** as to this

20  issue because the treatment notes and other evidence highlighted by Plaintiff are not

21  "medical opinions" under the relevant regulations.  See 20 C.F.R § 404.1513(a)(2)–(3).

22                    **VI.    CONCLUSION**

23       The reviewing court may enter a "judgment affirming, modifying, or reversing"

24  the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand

25  the case to the Social Security Administration for further proceedings.  Id.  The reviewing

26  court has discretion in determining whether to remand for further proceedings or award

27  benefits.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,

28  888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where

1  additional administrative proceedings could remedy defects in the decision.  See Kail v.

2  Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is

3  appropriate where no useful purpose would be served by further administrative

4  proceedings, where the record has been fully developed, or where remand would

5  unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See

6  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Hoffman v. Heckler, 785 F.2d

7  1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kornock

8  v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

9       Here, Plaintiff contends that the "credit-as-true" doctrine warrants an order

10  reversing the Commissioner's decision, directing the Commissioner to find Plaintiff

11  disabled and entitled to benefits retroactive to August 20, 2019, and rewarding Plaintiff

12  reasonable attorney's fees.  (Mot. at 21, Reply at 12.)  Defendant asks the Court to

13  affirm the ALJ's decision, arguing it is free of harmful legal error and supported by

14  substantial evidence.  (Opp'n at 20.)  In the event the Court finds harmful error, the

15  Commissioner asserts the proper remedy is to remand for further proceedings.  (Id.)  For

16  the reasons discussed above, we find that remanding for further proceedings could

17  remedy the defects in the ALJ's decision.  Accordingly, the Court **RECOMMENDS** that

18  Plaintiff's Brief on the Merits be **GRANTED in part**, that the Commissioner's decision be

19  **REVERSED**, and that this matter be **REMANDED** for further administrative proceedings

20  pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Court specifically

21  directs the ALJ to address Plaintiff's mental impairments in the RFC analysis.  Because a

22  new RFC determination could necessarily impact other findings, upon remand the ALJ

23  should also conduct a new five-step sequential evaluation process.  See 20 C.F.R. §

24  404.1520.

25       **IT IS ORDERED** that no later than **March 6, 2024**, any party to this action may file

26  written objections with the Court and serve a copy on all parties.  The document should

27  be captioned "Objections to Report and Recommendation."

28  ///

22cv1833-W (MSB)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **March 13, 2024**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  February 21, 2024

Honorable Michael S. Berg
United States Magistrate Judge

28